# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **MARCOS ESTEVEZ,** | ) | |
| | ) | **C.A. NO. 1:09-CV-11731-LTS** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **CITY OF LAWRENCE, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## PLAINTIFF MARCOS ESTEVEZ'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF JAIME BRITO AND CARMEN PURPORA

NOW COMES the Plaintiff Marcos Estevez (Estevez) to submit his Opposition to the motion for summary judgment of defendants Jaime Brito (Brito) and Carmen Purpora (Purpora). Docket # 66.   Defendants Brito and Purpora seek summary judgment on all Counts against them contained in Plaintiff's Amended Complaint [Docket # 34-1] at p.1 of their moving papers. [Docket # 66 at p. 1]  Plaintiff contends that there is a legitimate dispute as to the existence of facts material to Plaintiff's claims against Brito and Purpora.  In further support, the Plaintiff states as follows:

## COUNTS AGAINST BRITO AND PURPORA

Defendants Brito and Purpora have moved for summary judgment as to all counts against them. These are: Count 3 - violation of Fourth and Fourteenth Amendment rights by Brito and others by placing Marcos Estevez in a Dangerous and Helpless Situation; Count 4 – violation of Fourth and Fourteenth Amendment Rights for failing to intervene in an attack; Count 6 – Intentional Infliction of Emotional Distress; and Count 8 – violations of Massachusetts Civil Rights Act.

1

## BACKGROUND FACTS

Plaintiff Marcos Estevez ("Estevez") alleges that at approximately 2:40 p.m. on October 20, 2006, after a foot pursuit, he was pushed down onto the surface of the concrete sidewalk on Daisy Street in Lawrence, Massachusetts, by Officer Terrence Pennington. Id. at ¶17.  Other officers of the Lawrence Police Department then rushed onto the scene, including one of the moving defendants, Carmen Purpora, and that point the shod foot of a police officer kicked Mr. Estevez in the right eye.  Plaintiff also contends Officer Wilcox ground Mr. Estevez's face and forehead into a cement sidewalk.  Id. at ¶18.  After handcuffs were placed onto Mr. Estevez, and while his body was still upon the cement sidewalk, another officer kicked Mr. Estevez in the ribs, causing a rib fracture.  Id. at ¶19.

Plaintiff also contends that once at the Lawrence Police Station, defendant officer Kyle R. Wilcox struck Marcos Estevez in the jaw causing a jaw fracture.  Id. at ¶21.  In the Amended Complaint, plaintiff alleges Jaime Brito observed the assault by Officer Wilcox in the fingerprint room and did nothing.  Moreover, when Estevez had been forced down on the ground and made complained about the unjustified assault, Officer Brito told Estevez to "toughen up" and with great force picked the body of Estevez up off the floor by lifting him under his arms.  Id. at ¶22.

Plaintiff also contends that at the time of the physical assault that fractured his jaw, another officer in the room said "I didn't see nothing" and Sgt. Quaglietta stated to Officer Wilcox, "You got him good."  Id. at ¶23.  Bleeding from the face and jaw, Marcos Estevez requested medical attention but was refused the medical care that he required by officers of the Lawrence Police Department, including but not limited to booking officer Carmen Purpora.  Id. at ¶24.

Hours after taking Marcos Estevez into custody, inflicting serious injuries and refusing medical attention, officers then threatened Estevez that he would not be released unless he signed a statement. "[A]ll you have to do", it was stated, was sign an admission. In extreme pain and under force of threat to infliction of additional injuries and extreme coercion by officers of the Lawrence Police Department, Estevez did succumb to overwhelming pressure and signed papers. Id. at ¶25.

Immediately after succumbing to the force of threat to sign a statement, Mr. Estevez was released and a friend transported him to Lawrence General Hospital.  Id. at ¶27.  At the emergency room the injuries of Marcos Estevez were diagnosed as compound angle fracture to the right mandible and other injuries and his jaw was wired shut.  Mr. Estevez was also required to undergo additional follow up care with an oral surgeon.  Id. at ¶28.

## A DEFICIENCY OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – THE STATEMENT OF UNDISPUTED FACTS

A quick review of the moving papers shows the format of defendants' motion is unusual, and plaintiff contends the summary judgment motion is deficient, because the papers do not contain a separate statement of numbered, undisputed facts, as is commonly the case.  Local Rule 56.1 states, "Motions for summary judgment shall include a concise statement of the material facts of record…Failure to include such a statement constitutes grounds for denial of the motion."  Id. at p. 56.  The local rules does not say the statement of undisputed fact must be a separate document, but Defendants' moving papers do not contain a concise list of enumerated facts to which Plaintiff can simply respond.  Instead, the moving papers offer a section called "undisputed facts" which offer five paragraphs of assertions, citing three sets of interrogatory answers and two of the depositions taken in this case.   As provided by the local rule, the Court

may deny the moving papers on this point alone, and Plaintiff argues the Court should do so.

If the Court is willing to overlook this perceived deficiency, for ease of review, Plaintiff has prepared Plaintiff's Response to Defendants' "Undisputed Facts" (PRDUF).  In the PRDUF plaintiff has assigned numbers to all of the various "undisputed facts" contained in the moving papers [Docket # 66] at pp. 2-4.  The PRDUF also contains additional material facts that plaintiff believes are pertinent to this summary judgment inquiry.

### FACTS

Plaintiff incorporates the facts from the PRDUF.

### STANDARD OF REVIEW

Summary judgment is appropriate only when the record reflects no genuine issue as to any material fact and indicates that the moving party is entitled to judgment as a matter of law. See *Morelli v. Webster*, 552 F. 3d 12 (1st Cir. 2009); see also Fed. R. Civ. P. 56(c).  The Court must take the facts in the light most favorable to the nonmovant. See *Cordi-Allen v. Conlon*, 494 F.3d 245, 248 (1st Cir. 2007). "This means that where, as here, there is a wide divergence between the parties' first-hand accounts of the relevant events, we must adopt the nonmovant's version." *Morelli v. Webster*, 552 F.3d 12, 15 (1st Cir. 2009), citing *Scott v. Harris*, 550 U.S. 372 (2007). The summary judgment standard requires "absolute deference" to the nonmovant's facts as long as they are documented by affidavit on personal knowledge or otherwise by materials of evidentiary quality.  *Id*. at 18-19.

The Court must allow the findings and reasonable inferences a nonmovant's evidence will allow, regardless of the quantity or quality of contradictory evidence. "[T]o survive summary judgment a plaintiff is not required to rely only on uncontradicted evidence.  Where the record contains inconsistencies that favor in some lights the defendants and in others the

plaintiff, as long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the fact finder must be allowed to determine which version of the facts is most compelling." *Sensing v. Outback Steakhouse of Florida et al.*, 575 F.3d 145, 153 (1st Cir. 2009) quoting Calero-Cerezo, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (internal quotes and citation omitted). See also *Davison v. Gov't Off P.R. Firefighters Corps.*, 471 F.3d 220, 222 (1st Cir. 2006). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## ARGUMENT

**A.  THERE IS SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON COUNT 4, ALLEGING BRITO AND PURPORA VIOLATED MARCOS ESTEVEZ'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS BY FAILING TO INTERVENE IN AN EXCESSIVE FORCE ATTACK BY OTHER STATE ACTORS, ESPECIALLY WHEN THAT OTHER STATE ACTOR (KYLE WILCOX) IS KNOWN TO BE AGGRESSIVE.**

As noted in defendants' moving papers Police officers can be held liable under 42 U.S.C. § 1983 for failure to intervene and protect a victim of excessive force from another officer. Plaintiff submits both Brito and Purpora had a "realistic opportunity to prevent an attack" at the station. Gaudreault, 923 F.2d at 207 n. 3.  In Gaudreault, 923 F.2d at 206, the plaintiff alleged that an officer had hit him with a night stick and kicked him in the head. Nevertheless, the court noted that other officers who had been present during the alleged assault had had no realistic opportunity to intervene. Id. at 207 n. 3.  This case is not analogous.  Here, there was ample opportunity for officers present in the booking area to see Wilcox was getting himself worked up before he punched Estevez; in other words there was a realistic opportunity to intervene.

Estevez was punched in the jaw by Wilcox in the fingerprinting room.  Before this occurred, Wilcox was shouting bad words at Estevez, and claiming Estevez could have killed somebody with reckless driving, and asking why Estevez didn't stop.  PRDUF ¶22.  Estevez told Wilcox to Fuck Off, that catching people like Estevez was part of his job and to stop crying about it.  An officer present egged Wilcox on, saying, "Oooh, ooh" so Wilcox came across the door (sic) and said, "Say something else."   Estevez said the word "something" and Wilcox smirked and punched ME.  Present were: the fingerprinting officer, the sergeant and Sapienza.  After that someone said "Oh, you got him good."    Only then did Brito roughly pick ME up by his handcuffed arms.  Id.

This was not a sudden, unforeseeable event as in the following cases cited by defendants: Gaudrealt v. Municipality of Salem, Mass., 923 F.2d 203 (1st Cir. 1990) (no mention of word intervene); Jesionowski  v. Beck, 937 F Supp 95 (D. Mass. 1996) (two quick kicks to head during initial arrest could not be foreseen); Noel v. Town of Plymouth, 895 F.Supp. 346 (D. Mass. 1995) (In *Noel,* it was determined that "the plaintiff's purported injuries are most consistent with a scuffle of quick duration, involving a blow to the face followed by a blow to the back." *Id.* at 352-3. Given these circumstances, the court concluded that four of the defendant officers "had no realistic opportunity to intervene, and cannot be held liable for failing to do so." Id. at 353)

Estevez was left handcuffed and defenseless with an officer (Wilcox) who was visibly angry with the plaintiff and known to have a temper.  But for this, Estevez's jaw would not have been broken by Wilcox at the station in front of Purpora (who admits he was the booking officer). Brito and Purpora would have this court ignore the fact that the failure to intervene is not just the

second before Wilcox punches Mr. Estevez.   There was ample opportunity for both to keep Wilcox and Estevez separated once at the police station.

Summary judgment should not be granted in an excessive force context where there are such conflicting stories.[1]

### B. THERE IS SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON COUNT 3, ALLEGING BRITO AND OTHERS VIOLATED MARCOS ESTEVEZ'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS BY PLACING HIM IN A DANGEROUS AND HELPLESS SITUATION

It was easy for Plaintiff to determine that Wilcox was enraged at Daisy Street.  Estevez testified he ducked his head afterward when he perceived Wilcox (whose face showed he was extremely upset) was coming to kick him in the face.   Exhibit 1 at 97. (Plaintiff's response to undisputed fact number 11).   At the station it should have been apparent to Brito and Purpora that Wilcox was getting himself worked up at the station when Estevez and Wilcox were exchanging words; Wilcox was talking about how dangerous the pursuit was and Estevez was adding fuel to the fire with needling comments.

The court can infer that Brito was angry too.  Officers generally are when a suspect attempts to flee.  It is for this reason that officers involved in a hot pursuit are routinely kept away from the prisoner at the time of the arrest or shortly thereafter – e.g. after he is arrested and at the station.  Neither Brito nor Wilcox should have been permitted to interact with Estevez at the station so shortly after the pursuit and arrest of Estevez.

One can infer that Wilcox's violent act should have been foreseen. At the station, it should have been obvious to Purpora and Brito who were friendly with Wilcox and aware of his

---

[1] See *Wilkey v. Argo*, 43 Fed. App. 925, 928 (6th Cir. 2002) (citing <u>Kain v. Nesbitt</u>, <u>156 F.3d 669</u>, <u>673</u> (6th Cir. 1998)) ("If plaintiff's version as to the nature and degree of force used is credited . . . a jury question is created as to whether the force used was excessive.")

proclivity for aggression.  Plaintiff's undisputed fact 28.  The conduct of Brito further confirms he probably knew Plaintiff was making a mistake by bantering with Wilcox before the punch was thrown; Brito  picked me up and said to keep my mouth shut.  Exhibit 1 at p. 75.  Estevez estimated Brito was 10 feet away to ME's left and the fingerprinting officer was 2 feet away. The sergeant was behind the desk.  Brito assisted Estevez in getting up right after he was punched by Wilcox.  After Estevez was on his feet Brito pulled me over to the desk area and told me to shut up, don't pay Wilcox any mind.  Id. at 76.  It's not much of a leap to suggest Brito saw violence coming long before Wilcox actually threw his jaw fracturing punch.

Marcos Estevez was forced to suffer for many hours with an open jaw fracture instead of promptly being taken for medical treatment after he was punched in front of Purpora and Brito. This too amounts to placing Mr. Estevez in a dangerous and helpless situation.  Purpora and Brito ignored their pledge to serve and protect.  As McNamara testified, the booking officer (Purpora) had a responsibility to address a prisoner's substantial injury. The Court will recall the Deposition testimony of Sgt. Scott McNamara, who testified that whenever a prisoner is brought in injured, one responsibility of the booking desk officer to examine that prisoner for injuries and inquire if they need medical help. Undisputed Fact 21. Purpora didn't inquire how Estevez jaw became injured because he *witnessed* how it became injured. Purpora therefore placed Plaintiff in a dangerous situation in several ways – 1) allowing Wilcox to come into contact with a defenseless handcuffed prisoner; 2) leaving a badly injured prisoner in a cell for twelve hours to suffer with an open fractured jaw.  Undisputed fact 27.  Brito did the same.  Undisputed facts 21, 27.  For these reasons, the Court should allow a jury to determine whether Brito and Purpora are guilty of Count 3.

8

C. **THERE IS SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON COUNT 6.  COUNT 6 ALLEGES THE CONDUCT OF BRITO AND PURPORA WAS SUFFICIENTLY EXTREME AND OUTRAGEOUS THAT IT WARRANTS SENDING THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM TO THE JURY**

Plaintiff incorporates many of the foregoing facts into this section, as a jury could find the conduct of Brito and Purpora sufficiently extreme and outrageous.  Brito started taking stuff out of Estevez's pockets and the sergeant told Estevez he had a big mouth.  Estevez was dizzy.  Id. at 76.  After everything was taken out of Estevez's pockets he was walked to a cell by Brito.  Undisputed fact 20.  He had a broken jaw and he was held without medical care for more than 12 hours after the blow was received.  This Court should deny Brito's request that this count against him be dismissed.  Brito prepared a report that said Estevez's jaw might have become fractured when he fell, but plaintiff's expert, Richard Sullivan, a Ph.D. in emergency medicine says the fractured jaw could not have occurred as Brito claims, and the certified medical records of Winchester and Lawrence General Hospital reflect Estevez's claim that the jaw injury came from a blow, not a fall.  Plaintiff's expert Dr. Richard Sullivan, Ph.D., M.D. (emergency medicine specialist) testified in his deposition (Exhibit 8) that there was nothing in all the records he reviewed to suggest the jaw fracture plaintiff suffered was the result of a fall, but that a punch would create the type of fracture that plaintiff suffered.  PRDUF ¶22, Exhibit 8 at p. 59-61.

D. **THERE IS SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON COUNT 8, WHICH ALLEGES BRITO AND PURPORA VIOLATED THE MASSACHUSETTS CIVIL RIGHTS ACT**

The defendant officers interfered with Mr. Estevez's state and federal constitutional rights under the Massachusetts Civil Rights Act. Such a claim is established where: (1) the exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth (2) have been interfered with, or attempted to be interfered with, and (3) that the

interference or attempted interference was by "threats, intimidation, or coercion."
Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting Mass. Gen. Laws ch. 12, §
11I). The Supreme Judicial Court has defined the words "threats, intimidation, or coercion" as
follows:

"Threat" in this context involves the intentional exertion of pressure to make another
fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the
purpose of compelling or deterring conduct.... ["Coercion" means] "the application to
another of such force, either physical or moral, as to constrain him to do against his will
something he would not otherwise have done." Planned Parenthood League of Mass., Inc. v.
Blake, 417 Mass. 467, 474 (1994) (citations omitted).

The MCRA is "coextensive with 42 U.S.C. § 1983, except that the Federal statute requires
State action whereas its State counterpart does not," Bell v. Mazza, 394 Mass. 176, 181 (1985)
(internal citations and quotation omitted), and "the derogation of secured rights must occur by
threats, intimidation or coercion." Bally, at 713, 718 (1989) (internal citation omitted). "A direct
violation of civil rights is not, without a showing of coercive behavior, actionable." Britton v.
Maloney, 901 F.Supp. 444, 453 (D.Mass.1995); accord Longval v. Comm'r of Correction, 404
Mass. 325, 333 (1989). However, "[a]rrest and detention is intrinsically coercive for MCRA
purposes." Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 92-93 (1999).

Brito  picked me up and said to keep my mouth shut.  Id. at 75.  ME estimates Brito  was 10
feet away to ME's left and the fingerprinting officer was 2 feet away.  The sergeant was behind

the desk.  Brito  assisted ME in getting up right after he was punched by Wilcox, and stepped

between ME and Wilcox.  After ME was on his feet Brito  pulled ME over to the desk area and

told ME to shut up, don't pay Wilcox any mind.  Id. at 76. Plaintiff's Statement of Material Facts

at ¶ 20.

A reasonable jury could find that this was an attempt to intimidate Mr. Estevez into

silence and to interfere with Mr. Estevez's right to seek redress for his injury, either by pursuing

legal claims against the officers in the courts or by reporting the officers' misconduct to the

relevant authorities or in the press.[3] In this light, Officer Brito's parting threat, intended to chill

the plaintiff's exercise of due process and 1st Amendment rights, fits neatly into the order of

events contemplated by the MCRA. Goddard v. Kelly, 629 F.Supp.2d 115, 128 (D. Mass. 2009)

("On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens,

intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that

the plaintiff has the constitutional right to do. Thus, for example, the statute would apply where a

defendant (1) threatened to beat up the plaintiff if (2) the plaintiff exercised his right to vote." Id.

at 128.[3]

The Supreme Court has consistently recognized the right to petition all branches of the

government, including the courts, Cal. Motor Transp. Co. v. Trucking Unltd., 404 U.S. 508, 510

(1972), for redress of grievances as "among the most precious of the liberties safeguarded by the

Bill of Rights." United Mine Workers, Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).

See also Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004).  In Goddard, the court went on to

note that the plaintiff – who was first threatened with physical assault and arrest, and then

immediately punched in the throat by the defendant officer – could easily identify a threat, but

could not establish a corresponding right that the defendant hoped to stifle. The court noted that

the plaintiff was arguing, essentially, that the officer threatened him with physical force in order to "cause the defendant to give up his right to be free from excessive force . . ." which contorted logic and the plain meaning of the statute. Id. at 129.

No such issue exists here, as Brito's remarks were intended not to intimidate Mr. Estevez into accepting a further beating, but to deter him from exercising his rights to seek redress on pain of further violence and harassment. Additionally, any assertion by the Defendant Brito that his statements, coming *after* the physical beating of Mr. Estevez had concluded, does not amount to a threat, intimidation, or coercion under the MCRA should fail.

In Davis v. Rennie, the First Circuit explicitly refused to impose such a limit on the relevant time frame in defining what statements amount to a threat, affirming judgments against all defendants who had violated the plaintiff's federal and Massachusetts civil rights. Davis v. Rennie, 264 F.3d 86, 112 (1st Cir. 2001). In Davis, the plaintiff, an involuntarily committed mental patient, sued several mental health workers at Westborough State Hospital for violating his substantive due process rights under the 14th Amendment, after he was held on the floor by several workers, beaten by another, and threatened with further punishment by the head nurse. The defendant head nurse who ordered the plaintiff restrained, allegedly waited until the beating of the plaintiff concluded, then crouched in front of him and told him "This is what you get when you act - this is what you get when you act like this." Id. at 94-95. On appeal, the defendant nurse argued that, because she made the statement after the beating, it did not constitute a threat made in connection with her failure to intervene when it became obvious excessive force was being employed. The court disagreed, responding "[w]e reject this attempt to limit the relevant time frame. Because the defendant nurse spoke to Davis immediately after the beating, her words implied that the plaintiff would be subject to more of the same treatment if he did not cooperate."

Id. at 112. Arguably, the same implication was present in Brito's remarks to Mr. Estevez, following the beating - the threat, although made after the beating ended, was intended *prospectively* to warn the defendant not to exercise his rights.

For the foregoing reasons, plaintiff has raised a jury question as to Count III of his complaint alleging violations of the Massachusetts Civil Rights Act and summary judgment should be denied.

### E.  THERE IS SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON COUNT 10, WHICH ALLEGES BRITO AND PURPORA (AS WELL AS PENNINGTON AND WILCOX) CONSPIRED TO HIDE THE VARIOUS INSTANCES OF ABUSE OF PLAINTIFF, AND PLAINTIFF WAS HARMED THEREBY

Plaintiff was forced to suffer for many hours with an open jaw fracture instead of promptly being taken for medical treatment.  Neither Brito nor Purpora let superiors know about the punch.  Yet, there is ample evidence to suggest Estevez was hurting and requesting medical attention.

Another prisoner witness to this case is named Reynaldo Cepeda.  He is an employee of the Commonwealth of Massachusetts supervises a Youth Services facility.  He was wrongfully arrested 10/20/06 on allegations he was disorderly when he was in a Blockbuster video with his girlfriend.  He met Estevez in a cell in Lawrence.  Estevez was holding his fractured jaw up with a t-shirt because he had been denied paper towels.  Exhibit 11, Cepeda Deposition at 31.

Estevez told Cepeda he had been beaten by Officer Wilcox, that he requested to be taken to a hospital and had been denied same.  Cepeda Deposition at 9:19; 10:14-18; 32.  The request for medical care was denied three times.  *Id*. at p. 35.  Cepeda was present when Estevez asked medical assistance but was denied because he was "being bailed soon".  *Id*. at p. 11:1-4.  Cepeda recollected that the attitude of one officer who Estevez had asked for medical attention was

carefree (*Id*. at p. 34), though Estevez "definitely in pain." *Id*. at p. 39.

With his fractured jaw, ME had to discuss at length the details of the stolen car with Brito. Ultimately, he signed a statement, and Betty wasn't charged with any crimes.  After his discussion with Brito in the interrogation room, ME was brought downstairs, and ME asked to see a doctor or be taken to the hospital because his mouth was hurting.  ME described it like a throbbing pain in the side of his jaw and he couldn't see out of his right eye, which was completely closed.  Exhibit 1 at 83.

Instead of affording Mr. Estevez prompt medical care Brito locked Estevez back up in a holding cell and told ME not to worry because the bail bondsman was on his way, as Betty was upstairs already with the bail money.  ME did not make bail but was released eventually at 2:30 or 3:00 am the next day.  Before that occurred the bail bondsman had been there twice and two other prisoners were released.  ME kept asking officers that walked by why he wasn't being released since his bail money was already upstairs and waiting.  ME was told it was because he was on federal probation.  ME testified he was there the whole weekend.  Exhibit 1 at 84-85.  In addition to asking passing officers why he was not being released, he spoke with Reynaldo Cepeda, whom he met that night when Cepeda was put in a holding cell with him.  Cepeda asked him what happened to ME because he had dried blood on his face.  In the absence of mirrors in the area, Cepeda described to ME what he saw.  Id. at 87.  So before being released ME was held more than 13 hours with a very painful broken jaw.  Exhibit 8 at pp. 17-18.  In short, there is more than sufficient evidence to support plaintiff's conspiracy claim, and the jury should get to determine whether he was injured thereby.

## CONCLUSION

Because Mr. Estevez has presented sufficient evidence of the following violations by Brito and Purpora: failure to intervene (Count 4); placing plaintiff in a dangerous situation (Count 3); intentional infliction of emotional distress (Count 6); a viable claim under the Massachusetts Civil Rights Act (Count 8); a conspiracy resulting in harm to plaintiff (Count 10), summary judgment on those counts should be denied.

Plaintiff,
Marcos Estevez

By his attorneys,
/s/ *Robert Beadel*
_____
Hector E. Pineiro, Esquire, BBO # 555315
Robert H. Beadel, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
Fax (508) 770-1300
bobbeadel@hotmail.com

-AND-

/s/Andrew D. Myers
Andrew D. Myers (BBO # 555220)
Law Offices of Andrew D. Myers
89 Main St.
North Andover, MA 01845
(978) 691-5453
andrew@attorney-myers.com

CERTIFICATE OF SERVICE

I, Robert Beadel, Esq., hereby certify that the within document, filed this date via the Electronic Filing System of the Court, has been served on all registered participants, and there are no unregistered participants.

DATED: 6/13/11

/s/Robert H. Beadel
Robert H. Beadel